| | | | |
|---|---|---|---|
| | AUSA: Sara Woodward | Telephone: | (313) 226-9180 |
| AO 91 (Rev. 11/11) Criminal Complaint | Special Agent: Christopher Pennisi | Telephone: | (313) 226-9180 |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
   v.
ALBERIM ALA

Case No.    Case: 2:24−mj−30169
Assigned To : Unassigned
Assign. Date : 5/4/2024
Description: COMP USA V. ALA (KB)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __May 2, 2024__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a) | Possession with intent to distribute controlled substances |
| 18 U.S.C § 922(g)(1) | Felon in possession of a firearm |
| 18 U.S.C. § 924(c) | Possession of a firearm in furtherance of drug trafficking |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_Complainant's signature_

Christopher Pennisi, Special Agent- FBI
_Printed name and title_

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: __May 4, 2024__

_Judge's signature_

City and state: __Detroit, Michigan__    Hon. Anthony P. Patti, United States Magistrate Judge
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF AN CRIMINAL COMPLAINT

I, Christopher S. Pennisi, being first duly sworn, hereby state:

1. I have been employed as an FBI special agent for nineteen years. I am currently assigned to the Violent Crime Squad in the Detroit Division of the FBI and the Commercial Auto Theft Section of the Detroit Police Department. During my career, I have investigated federal violations concerning crimes of violence, firearms, and vehicle theft. I have gained experience through training and everyday work related to these types of investigations.

2. I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2501(7), that is, an officer of the United States who is empowered by the law to conduct investigations of and to make arrests for the offenses enumerated in 18 U.S.C. § 2516.

3. I make this affidavit from personal knowledge based on my participation in this investigation, including interviews conducted by myself and/or other law enforcement agents, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience.

4. The statements contained in this affidavit are based on my experience and background as a special agent and on information provided by police officers, other agents of the FBI, and other law enforcement personnel. The information

1

outlined below is provided for the limited purpose of establishing probable cause and does not contain all of facts known to law enforcement related to this investigation.

5. This affidavit is made in support of a criminal complaint charging ALBERIM ALA with the following crimes: (1) possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a), (2) felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and (3) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).

## PROBABLE CAUSE

6. On May 1, 2024, at approximately 8 pm, a sergeant with the Detroit Police Department Commercial Auto Theft Section observed a purple Dodge Durango with orange Hellcat logos in the area of Livernois and W. Warren in Detroit, MI.[1] The purple Dodge Durango had license plate 3PYK74.

7. The DPD sergeant observed the Durango driving more than 55 miles per hour in a 35 mile per hour zone, squealing the tires, and weaving among lanes without signaling. Later, a DPD detective observed the same vehicle fail to obey a red traffic signal.

---

[1] In 2021, Dodge released the SRT "Hellcat" edition Durango with a signature supercharged 6.2 litre, 710 horsepower engine, intending it to be the fastest production sport utility vehicle ever released. There were no Hellcat Durangos released prior to 2021.

8. The registration associated with license plate 3PYK74 indicated that the vehicle bearing that plate was a 2012 Dodge Durango, even though the "Hellcat" edition Dodge Durango wasn't released until 2021. In addition, the vehicle observed by the DPD sergeant and detective had front and rear body panels of a newer model Durango.

9. According to a database of insurance claims, the Vehicle Identification Number (VIN) associated with the vehicle bearing license plate 3PYK74 was equipped with a 3.6L V6 engine from the factory. Based on the performance of the vehicle and its loud exhaust, the DPD sergeant believed that this vehicle had a much larger engine than what came from the manufacturer.

10. In your affiant's training and experience, an altered engine and loud exhaust, combined with body panels and logos indicating a completely different car than listed in the vehicle's registration, can be indicators that the car has been stolen. Stolen vehicles often have another vehicle's VIN number applied to them so as to pass off the stolen vehicle as legitimate to the casual observer.

11. On May 2, 2024, members of the Detroit Police Department Commercial Auto Theft Section went to the registered address of the Dodge Durango assigned Michigan license plate 3PYK74: XX Sunnyside Street in Ecorse, Michigan. The Durango was parked on the street in front of XX Sunnyside Street.

12.     When police officers knocked on the door of XX Sunnyside, ALBERIM ALA, the registered owner of the Dodge Durango, answered the door. Officers told ALA that they had questions regarding his Durango and asked if they could see any paperwork for the Durango he might have along with the keys to the vehicle. ALA stated, "I'll go get them" and turned to begin walking back into the house.

13.     As ALA turned, a DPD lieutenant observed a handgun on the coffee table just inside the door, along with a magazine that appeared to have live rounds inside. The lieutenant announced the existence of the gun to the other officers and ALA was seized, escorted out of the house, and detained.

14.     An officer spoke with ALA outside of XX Sunnyside about his Durango. ALA gave the officer permission to enter the residence to retrieve paperwork for the vehicle along with the keys. When officers went inside the residence with ALA to get his paperwork, the officers observed a second gun in plain view: a rifle on a couch in the front living room. ALA led officers to a back bedroom to get his vehicle paperwork; there, officers observed a plastic sandwich bag containing pills that were not in any prescription bottles.

15.     After determining that ALA had prior felony convictions, law enforcement obtained a search warrant for XX Sunnyside Street. During the search of ALA's residence, a total of four firearms were found, including:

    a) A Canik Arms 9mm pistol located on the coffee table near the front door;

      b) A KFS – SKS rifle found on the couch;

      c) A FN Herstal 5.7 pistol found in a drawer in the bathroom;

      d) A Pioneer Arms Corp Hellpup pistol found under a bed.

All of the firearms were loaded upon discovery. A search of the serial numbers through the Michigan Law Enforcement Information Network database revealed that the FN Herstal 5.7 pistol was stolen from a house in Royal Oak, Michigan on March 2, 2024.

16. In addition to the firearms, three baggies containing 513 assorted pills, 15 empty pill bottles, $19,557 in US currency, a money counting machine, ammunition, large capacity ammunition magazines and the Dodge Durango were also seized.

17. Further review of the 513 pills revealed that 370 of them were Alprazolam, typically sold under the trade name Xanax, and 6 were amphetamine and dextroamphetamine, typically sold under the trade name Adderall. The remaining pills could not be identified without laboratory testing. Both Xanax and Adderall are both scheduled narcotics.

18. In your affiant's training and experience, narcotic pills found in bulk, when combined with a large amount of US currency, currency counters, empty pill bottles and plastic baggies are highly indicative of the unlicensed sale of narcotics for profit.

19. In your affiant's training and experience, those who sell narcotics on the street typically use firearms to defend their illicit enterprise from competitors or anyone intent on robbing them.

20. XX Sunnyside Street is located approximately 228 feet from a pre-school whose doors are directly across the street from the residence.

21. An examination of ALA's Dodge Durango was conducted by a civilian employee of the Detroit Police Department trained in the identification of vehicle parts. That examination revealed that the Durango had a legitimately purchased aftermarket engine, but the powertrain control module, interior seats, dash, and side panels all came from another Durango that was reported stolen by the Warren Police Department on April 29, 2021.

22. A criminal history check for ALA revealed that in 2018, ALA pleaded guilty to possession of controlled substances and was sentenced to 18 months in prison. In 2020, ALA pleaded guilty carrying a concealed weapon, a felony.

23. I have been an FBI firearms instructor for 16 years and have experience with numerous firearms including those manufactured by Canik, FN Herstal, Pioneer Arms and KFS. None of the four has manufacturing facilities in Michigan. Based upon that experience, as well as my own research, I have determined that the Canik Arms 9mm pistol, KFS – SKS rifle, FN Herstal 5.7 pistol and Pioneer Arms Corp Hellpup that ALA possessed on May 2, 2024 are firearms as defined under 18

6

U.S.C. § 921 and were manufactured outside of the state of Michigan after 1898, and therefore had traveled in and affected interstate commerce prior to ALA's possession.

## CONCLUSION

24. In consideration of the foregoing, I respectfully request that this Court issue a complaint and arrest warrant for ALBERIM ALA for violations of 21 USC § 841(a), 18 U.S.C. § 922(g) and 18 U.S.C. § 924(c).

Respectfully submitted,

_____
CHRISTOPHER S. PENNISI
Special Agent, FBI

Sworn to before me and signed in my presence
and/or by reliable electronic means.

_____
Hon. Anthony P. Patti
United States Magistrate Judge

Dated:   May 4, 2024

7